| | |
|---|---|
| JAMES GLOSTER, Individually and on Behalf of All Others Similarly Situated, | **Case No.** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| STANDARD LITHIUM LTD., ROBERT MINTAK, and KARA NORMAN, | |
| Defendants. | |

Plaintiff James Gloster ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Standard Lithium Ltd. ("Standard Lithium" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Standard Lithium securities between May 19, 2020 and November 17, 2021, both dates inclusive (the "Class

Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Standard Lithium explores for, develops, and processes lithium brine properties in the U.S. The Company's flagship project is the Lanxess project with approximately 150,000 acres of brine leases located in south-western Arkansas.

3. On May 19, 2020, Standard Lithium announced the successful start-up of the Company's industrial-scale Direct Lithium Extraction Demonstration Plant at Lanxess's South Plant facility in southern Arkansas (the "Demonstration Plant"), a purportedly "first-of-its-kind plant" using Standard Lithium's proprietary LiSTR Direct Lithium Extraction ("LiSTR") technology. According to the Company, one of the key features of the LiSTR technology was that it increased lithium recovery efficiencies to more than 90%.

4. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the LiSTR technology's extraction recovery efficiencies were overstated; (ii) accordingly, the Company's final product lithium recovery percentage at the Demonstration Plant would not be as high as the Company had represented to investors; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

5. On November 18, 2021, Blue Orca Capital ("Blue Orca") published a short report (the "Blue Orca Report" or the "Report") alleging that Standard Lithium's claims of achieving of 90% extraction rates of battery grade lithium at its Arkansas demonstration site are not supported

by previously undisclosed data filed by the Company with the state regulator, which indicated significantly lower recovery rates.

6.      Following publication of the Blue Orca Report, Standard Lithium's common share price fell $1.86 per share, or 18.84%, to close at $8.01 per share on November 18, 2021.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to Standard Lithium's amendment to its most recent annual report on Form 40-F filed with the SEC, as of June 30, 2021, there were 141,166,203 of the Company's common shares outstanding.  Standard Lithium's common shares trade on the NYSE American ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Standard Lithium securities located within the U.S., some of which undoubtedly reside in this Judicial District.

11.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited

to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

12.     Plaintiff, as set forth in the attached Certification, acquired Standard Lithium securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13.     Defendant Standard Lithium is organized under the laws of Canada with principal executive offices located at Suite 110, 375 Water Street, Vancouver, British Columbia, Canada, V6B 5C6.  Standard Lithium's common shares trade in an efficient market on the NYSE under the trading symbol "SLI".  Prior to July 13, 2021, the Company's securities traded on the OTC Markets (the "OTC") under the trading symbol "STLHF".

14.     Defendant Robert Mintak ("Mintak") has served as Standard Lithium's Chief Executive Officer at all relevant times.  Mintak is also a Director of the Company.

15.     Defendant Kara Norman ("Norman") has served as Standard Lithium's Chief Financial Officer at all relevant times.

16.     Defendants Mintak and Norman are sometimes referred to herein as the "Individual Defendants."

17.     The Individual Defendants possessed the power and authority to control the contents of Standard Lithium's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Standard Lithium's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Standard Lithium, and their access to material information available to them but not

to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

18.     Standard Lithium and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19.     Standard Lithium explores for, develops, and processes lithium brine properties in the U.S. The Company's flagship project is the Lanxess project with approximately 150,000 acres of brine leases located in south-western Arkansas.

### Materially False and Misleading Statements Issued During the Class Period

20.     The Class Period begins on May 19, 2020, when Standard Lithium issued a press release announcing the successful start-up of the Demonstration Plant, a purportedly "first-of-its-kind plant" using Standard Lithium's proprietary LiSTR technology. That press release represented, among other things, that one of the "key features" of its LiSTR technology was that it "[v]astly increases recovery efficiencies to as much as >90%[.]" In addition, the press release quoted Defendant Mintak, stating, in relevant part:

> Direct Lithium Extraction has received a lot of recent media and investor attention. Standard Lithium has taken a project-focussed approach towards demonstrating our LiSTR DLE process. The successful commissioning and operation of the LiSTR extraction technology represents a significant milestone towards proof of concept and a final investment decision for our Arkansas project. Standard Lithium prides itself on a practical approach, and this has paid dividends by developing a truly innovative process that actually works in the real world not just the laboratory. This project milestone represents a major advance towards re-establishing a U.S. domestic supply of battery quality lithium chemicals.

21.     On May 29, 2020, Standard Lithium published Management's Discussion and Analysis for the nine months ended March 31, 2020 (the "Q3 2020 MD&A"). In discussing the Lanxess Project, the Q3 2020 MD&A stated, in relevant part, "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed as conclusions:

- The total Indicated LANXESS Li-Brine Resource is estimated at 3,140,000 tonnes of LCE. The volume of resources will allow the lithium bearing brine extraction operations to continue well beyond the currently assumed 25 years
- The results of the geological evaluation and resource estimates for the Preliminary Economic Assessment of LANXESS Smackover Project justifies development of the project to further evaluate the feasibility of production of lithium carbonate
- The experience gained from the long-term operations of the brine extraction and processing facilities on the LANXESS controlled properties decreases the risk related to sustainability of the brine extraction from the Smackover Formation.
- The well-developed infrastructure and availability of a qualified work force will decrease the risks related to construction, and commissioning and operating of the lithium extraction and lithium carbonate processing plants
- The results of the bench scale testing and mini-plant process testing program increase the level of confidence in the key parameters for the operating cost estimate.
- Improvements made to process efficiency, particularly the reduction of reagents and chemicals consumption, will improve the economics of the Project.
- The discounted cash flow economic analysis, at a discount rate of 8%, indicates that the Project is economically viable under the base case conditions. The key economic indicators, NPV = US$989,432,000 (post-tax) and IRR = 36% (post-tax), are very positive.

22.     On September 9, 2020, Standard Lithium issued a press release entitled, "Standard Lithium Ships First Large Volume of Lithium Chloride Product From Arkansas Facility." The press release stated, in relevant part:

**Direct Lithium Extraction**
The Company's first-of-its-kind in the world DLE Demonstration Plant is installed at LANXESS' South Plant facility near El Dorado, Arkansas. The Demonstration Plant utilizes the Company's proprietary "LiSTR" technology and is designed to continuously process an input tail brine flow of 50 gallons per minute (gpm; or 11.4

m3/hr) from the Lanxess South Plant, which is equivalent to an annual production of between 100-150 tonnes per annum of lithium carbonate.

23.     On September 18, 2020, Standard Lithium issued a press release marking the commencement of operations at the Company's LiSTR Direct Lithium Extraction facility.  That press release stated, among other things, that "[w]hen compared to the conventional methods for recovering lithium from brine, the LiSTR process provides many benefits" including "[s]ignificant efficiency gains - as 90% recovery versus 40-60%[.]"

24.     On September 21, 2020, Standard Lithium issued a press release entitled, "Standard Lithium Marks Commencement of Operations at Arkansas Plant With a Virtual Ribbon Cutting Ceremony."  The press release stated, in relevant, "[w]hen compared to the conventional methods for recovering lithium from brine, the LiSTR process provides many benefits" including "[s]ignificant efficiency gains - as 90% recovery versus 40-60%[.]"

25.     On October 27, 2020, Standard Lithium published Management's Discussion and Analysis for the year ended June 30, 2020 (the "2020 MD&A").  In discussing the Lanxess Project, the 2020 MD&A stated, in relevant part, "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed substantively similar conclusions related to the Lanxess Project as discussed, *supra*, in ¶ 21.

26.     On November 27, 2020, Standard Lithium published Management's Discussion and Analysis for the three months ended September 30, 2020 (the "Q1 2021 MD&A").  In discussing the Lanxess Project, the Q1 2021 MD&A stated, in relevant part, "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed substantively similar conclusions related to the Lanxess Project as discussed, *supra*, in ¶ 21.

27.     On February 25, 2021, Standard Lithium published Management's Discussion and Analysis for the six months ended December 31, 2020 (the "Q2 2021 MD&A").  In discussing the

Lanxess Project, the Q2 2021 MD&A stated, in relevant part, "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed substantively similar conclusions related to the Lanxess Project as discussed, *supra*, in ¶ 21.

28. On May 26, 2021, Standard Lithium published Management's Discussion and Analysis for the nine months ended March 31, 2021 (the "Q3 2021 MD&A"). In discussing the Lanxess Project, the Q3 2021 MD&A stated, in relevant part, "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed substantively similar conclusions related to the Lanxess Project as discussed, *supra*, in ¶ 21.

29. On October 28, 2021, Standard Lithium filed an annual report on Form 40-F with the SEC, reporting the Company's financial and operating results for its fourth quarter and fiscal year ended June 30, 2021 (the "2021 40-F"). Appended as an exhibit to the 2021 40-F was Management's Discussion and Analysis for the year ended June 30, 2021 (the "2021 MD&A"). In discussing the Lanxess Project, the 2021 MD&A stated, in relevant part, that "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed substantively similar conclusions related to the Lanxess Project as discussed, *supra*, in ¶ 21.

30. On November 10, 2021, Standard Lithium published Management's Discussion and Analysis for the three months ended September 30, 2021 (the "Q1 2022 MD&A"). In discussing the Lanxess Project, the Q1 2022 MD&A stated, in relevant part, "[t]he final product lithium recovery [of its bromine extraction operations] is about 90%[,]" and listed substantively similar conclusions related to the Lanxess Project as discussed, *supra*, in ¶ 21.

31. The statements referenced in ¶¶ 20-30 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) the LiSTR technology's extraction recovery efficiencies were overstated; (ii) accordingly, the Company's final product lithium recovery percentage at the Demonstration Plant would not be as high as the Company had represented to investors; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

32.     On November 18, 2021, Blue Orca published the Report, alleging that Standard Lithium's claims of achieving of 90% extraction rates of battery grade lithium at its Arkansas demonstration site are not supported by previously undisclosed data filed by the Company with the state regulator, which indicated significantly lower recovery rates.  Specifically, the Blue Orca Report stated, in relevant part:

> **Arkansas Regulatory Filings Indicate Lithium Recovery Rates Far Less than Forecasted**. Standard Lithium has repeatedly claimed that its DLE technology will achieve 90% recovery rates at its Demonstration Plant, built on the LANXESS AG ("LANXESS") (FRA: LXS) bromine facility in Southern Arkansas. Yet **undisclosed to investors**, production data submitted by Standard Lithium to the Arkansas Oil & Gas Commission (the "AOGC") appears to show that the Demonstration Plant, which has been operating for 18 months, is barely achieving a fraction of this projected recovery rate. We calculate that in the past 12 months, based on the data, the Demonstration Plant achieved an average lithium recovery rate of just 13%. The data also indicates that the Demonstration Plant is displaying negative scale, with recovery rates substantially worse the longer the plant operates and the more brine it processes. We corroborated our analysis with an expert in DLE. In our opinion, this data suggests that the technology is neither economically viable nor scalable.

> *** 

> Standard Lithium's valuation is predicated on the claim that its technology can achieve high lithium recovery rates of 90% (vs 40%–60% for conventional processes).[] Standard Lithium claims that it has successfully proven this technology at its Demonstration Plant, which has been operating "full-time" since May 2020 in Southern Arkansas. But undisclosed to investors, independent data submitted by Standard Lithium to the Arkansas regulator appears to show otherwise.

When Standard Lithium completed commissioning of its Demonstration Plant in May 2020, it claimed that one of the key features of the technology was that it increased Lithium recovery efficiencies to more than 90%. The Company repeated this claim at its ribbon cutting ceremony in September 2020.

\*\*\*

Not only is this key to Standard Lithium's bull narrative, but it is also the key assumption underpinning the Company's lofty NPV forecasts. For example, Standard Lithium forecasts that its LANXESS Project is worth USD 989 million based on the assumption that it can recover 90% of the lithium from the brine.

\*\*\*

Despite being in operation for 18 months, Standard Lithium has been coy about disclosing any details to investors regarding the performance of the plant, only claiming that testing at the plant has been "successful." We disagree.

The Arkansas Oil & Gas Commission (the "AOGC") is the state-level regulatory body responsible for oil and gas related activities in Arkansas. Pursuant to its operating permit, Standard Lithium must disclose the Demonstration Plant's performance to the AOGC. Specifically, the order dictates that Standard Lithium must report the total quantities of tail-brine processed, and of lithium chloride and lithium carbonate produced from the Demonstration Plant **every quarter**.

\*\*\*

Although difficult to find, the AOGC publishes these quarterly reports on its website, making them publicly available for any investor to review. Because the government website is difficult to navigate, we think that these filings have not been widely read or understood by the market.

\*\*\*

Given that the Demonstration Plant was commissioned in May 2020 (with a ribbon cutting in September 2020), we would expect the results to generally match the Company's claims, especially regarding the efficiency of the technology.

Yet the records show that in the last 12 months, Standard Lithium's Demonstration Plant processed 6.2 million gallons of raw brine, containing a total of 5.1 tonnes of lithium (based on the reported average concentration of 217 mg/L). From this, the data indicates that the Demonstration Plant produced **only** 30 thousand gallons of lithium chloride.

\*\*\*

The concentration of this lithium chloride is not included in the Arkansas data. However, in its June 2021 prospectus, Standard Lithium stated that the Demonstration Plant will produce lithium chloride at a "high" concentration of 3,000–5,000 mg/L.

*\*\**

Even if we assume that the concentration of the lithium chloride produced by the Demonstration Plant is at the top end of the Company's forecasted range, we calculate that the implied average recovery rate for the Demonstration Plant over the past 12 months was just 13%.

*\*\**

The entire purpose of the pilot facility is to show that the technology is scalable. **Yet, the data shows that as the Demonstration Plant has continued to operate, recovery rates have plummeted**. In Q3 2021, the Arkansas data shows that the plant processed over 2 million gallons of brine yet generated only 8,983 gallons of lithium chloride. Despite processing **6x more** brine in Q3 2021 than Q2 2020, the data shows that Standard Lithium recovered **62% less lithium chloride**.

*\*\**

Not only does this undermine the viability of the technology but we think this data undermines the narrative that the technology is commercially scalable, as recovery rates appear to be decreasing as the Demonstration Plant processes more brine.

*\*\**

To verify our analysis, we submitted both the Arkansas data and the Company's technical reports to a DLE expert, who confirmed not only our calculations but also our conclusion that the Arkansas data indicated that the Demonstration Plant was falling far, far short of Standard Lithium's claims.

*\*\**

We also spoke to a former Albemarle executive, who told us that the Demonstration Plant should be able to perform at least as well as the Company projects in its commercial scale forecasts. This is because as the process scales up, projects such as this typically become less efficient.

*\*\**

Standard Lithium cannot claim that the Demonstration Plant is in ramp up phase. The Demonstration Plant has been running full time since May 2020, meaning that it is now almost at the end of its two-year operating life as per the Company's

financial disclosures. In their operating permit, the AOGC actually stipulated that the plant should not run for more than 18 months.

***

Standard Lithium's NPV and stock price rest on the notion that it is able to achieve recovery rates of 90%. Yet the Arkansas records show that the Demonstration Plant is recovering far less lithium than forecasted. In our opinion, the results at the Demonstration Plant are a damning indictment of the viability of the project and the value of Standard Lithium's technology.

(Emphasis in original.)

33. Following publication of the Blue Orca Report, Standard Lithium's common share price fell $1.86 per share, or 18.84%, to close at $8.01 per share on November 18, 2021.

34. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

35. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Standard Lithium securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Standard Lithium securities were actively traded on the NYSE and OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are

hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Standard Lithium or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Standard Lithium;

- whether the Individual Defendants caused Standard Lithium to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Standard Lithium securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Standard Lithium securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and OTC and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Standard Lithium securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

46.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Standard Lithium securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Standard Lithium securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

47.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

influence the market for Standard Lithium securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Standard Lithium's finances and business prospects.

48. By virtue of their positions at Standard Lithium, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

49. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Standard Lithium, the Individual Defendants had knowledge of the details of Standard Lithium's internal affairs.

50. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Standard Lithium. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Standard Lithium's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public

statements, the market price of Standard Lithium securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Standard Lithium's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Standard Lithium securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51. During the Class Period, Standard Lithium securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Standard Lithium securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Standard Lithium securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Standard Lithium securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

52. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases,

acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

54.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55.     During the Class Period, the Individual Defendants participated in the operation and management of Standard Lithium, and conducted and participated, directly and indirectly, in the conduct of Standard Lithium's business affairs.  Because of their senior positions, they knew the adverse non-public information about Standard Lithium's misstatement of income and expenses and false financial statements.

56.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Standard Lithium's financial condition and results of operations, and to correct promptly any public statements issued by Standard Lithium which had become materially false or misleading.

57.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Standard Lithium disseminated in the marketplace during the Class Period concerning Standard Lithium's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Standard Lithium to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Standard Lithium within the meaning of Section 20(a) of the Exchange Act.  In this

capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Standard Lithium securities.

58.     Each of the Individual Defendants, therefore, acted as a controlling person of Standard Lithium.  By reason of their senior management positions and/or being directors of Standard Lithium, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Standard Lithium to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Standard Lithium and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

59.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Standard Lithium.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 27, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.     I, james gloster_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against Standard Lithium Ltd. ("Standard Lithium" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.     I did not purchase or acquire Standard Lithium securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Standard Lithium securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.     The attached sheet lists all of my transactions in Standard Lithium securities during the Class Period as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


**Executed 1/12/2022**_____
                      **(Date)**


_____
            **(Signature)**


James Gloster
_____
            **(Type or Print Name)**

**Standard Lithium Ltd. (SLI)**                                    **Gloster, James**

### List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 9/23/2021 | 500 | $7.4000 |
| Purchase | 9/30/2021 | 200 | $8.3500 |
| Purchase | 10/1/2021 | 100 | $7.9700 |
| Purchase | 10/14/2021 | 100 | $9.4000 |
| Purchase | 10/18/2021 | 100 | $10.4500 |
| Purchase | 10/18/2021 | 200 | $9.8700 |
| Purchase | 10/21/2021 | 200 | $10.3500 |
| Purchase | 10/29/2021 | 200 | $11.4099 |
| Purchase | 11/10/2021 | 200 | $10.0400 |
| Sale | 10/25/2021 | (200) | $11.3500 |